1

2

3

4

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT

11                   EASTERN DISTRICT OF CALIFORNIA

12

13  DAMERON HOSPITAL ASSOCIATION, a ) Case No. 2:24-cv-01379-JAM-AC
    California Non-Profit           )
14  Association,                    )
                                    )
15            Plaintiff,            )
                                    )
16      v.                          )
                                    ) **ORDER GRANTING IN PART**
17  GEICO GENERAL INSURANCE COMPANY, ) **DEFENDANTS' MOTION TO DISMISS**
    a Nebraska Corporation,         )
18                                  )
              Defendant.            )
19 ─────────────────────────────── )
   DAMERON HOSPITAL ASSOCIATION, a ) Case No. 2:24-cv-00934-JAM-AC
20  California Non-Profit           )
    Association,                    )
21                                  )
              Plaintiff,            )
22                                  )
        v.                          )
23                                  )
    GEICO INDEMNITY COMPANY, a      )
24  Maryland Corporation,           )
                                    )
25            Defendant.            )
   ─────────────────────────────── )
26                    INTRODUCTION OF CASE

27      Before the Court is two related cases involving Geico General

28  Insurance Company and Geico Indemnity Company ("Defendant(s)"), who

                                    1

move to dismiss the Complaint by Dameron Hospital Association ("Plaintiff") for failure to state a claim. <u>See</u> Mot., ECF No. 12 and 10; Compl., ECF No. 1 (both). These cases involve nearly identical claims and legal arguments and were related pursuant to Local Rule 123. <u>See</u> ECF No. 9 (both). Plaintiff opposed the motions. <u>See</u> Opp'n, ECF Nos. 14 and 12. Defendants filed replies. <u>See</u> Reply, ECF Nos. 15 and 14. For the reasons below, Defendants' Motions are denied in part and granted in part with leave to amend.[1]

## I.    FACTUAL ALLEGATIONS

Plaintiff Dameron Hospital operates an emergency room in Stockton, California and seeks injunctive, declaratory, and compensatory relief arising from Defendants' Geico General Insurance Company ("Geico General") and Geico Indemnity Company ("Geico Indemnity") failure to pay Dameron Hospital certain benefits due under various patients' automobile policies. <u>See</u> Compl. at 24-25 (both). Specifically, this case involves the purported assignment of Med-Pay ("MP") and Uninsured Motorist ("UM") benefits by five patients who were admitted and discharged from Dameron Hospital. Dameron claims entitlement to these benefits pursuant to the Assignment of Benefits ("AOB") contained in each patients' respective Conditions of Admission ("COA") paperwork. Four of the patients have Medicare or Veterans Administration healthcare as their medical insurance (D.S., X.K., M.A., A.G.) and one individual (J.M.) is alleged to be a self-pay patient with no other insurance. <u>See</u> Compl. ¶ 4 (both). Each of

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for August 20, 2024.

1  these individuals is alleged to maintain automobile coverage

2  through either Defendant Geico General Insurance Company or Geico

3  Indemnity Company.  See Compl. ¶ 6-7 (both).

4      Dameron Hospital alleges three causes of action in its

5  Complaint.  The First Cause of Action is a claim for injunctive

6  relief under California's Unfair Competition Law, Business and

7  Professions Code § 17200 ("UCL") stemming from a breach of

8  contract.  The Second Cause of Action alleges breach of contract by

9  Defendants for failure to honor the assignment of MP or UM benefits

10  in Dameron Hospital's COAs signed by the aforementioned emergency

11  room patients.  The Third and final Cause of Action is a claim

12  under the Medicare Secondary Payer Act, U.S.C.A. § 1395y(b)(3)(A)

13  ("MSP Act"), alleging that Defendants have primary payer

14  responsibility for the services rendered by Plaintiff Dameron

15  Hospital.

16                    II.   OPINION

17      A.   Legal Standard

18      A Rule 12(b)(6) motion challenges the sufficiency of a

19  complaint for "failure to state a claim upon which relief can be

20  granted."  Fed. R. Civ. P. 12(b)(6).  Under the plausibility

21  pleading standard set forth in Bell Atlantic Corp. v. Twombly, 550

22  U.S. 544, 570 (2007), a plaintiff survives a motion to dismiss by

23  alleging "enough facts to state a claim to relief that is

24  plausible on its face."  The complaint must contain sufficient

25  "factual content that allows the court to draw the reasonable

26  inference that the defendant is liable for the misconduct

27  alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  At the

28  Rule 12(b)(6) stage, the Court must accept all nonconclusory

1    factual allegations of the complaint as true and construe those

2    facts and the reasonable inferences that follow in the light most

3    favorable to the Plaintiff.  Id.; see also Knievel v. ESPN, 393

4    F.3d 1068, 1072 (9th Cir. 2005).

5        B.   Analysis

6             1.  Plaintiff Fails to State a Claim for Breach of

7                 Contract

8                 a. The COAs Are Unenforceable Adhesion Contracts Under

9                    California Caselaw for Patients with Medical

10                   Insurance

11       Defendants argue that the COAs and AOBs that Plaintiff

12   requires patients to sign upon admittance or discharge from

13   Dameron Hospital are adhesion contracts, thus there is no breach

14   of contract claim for such unenforceable contracts that defy the

15   reasonable expectations of the signatory.  See Mot. at 9.

16   Plaintiff argues that an unpublished district court order in this

17   district, Dameron Hosp. Ass'n v. State Farm Mut. Auto. Ins. Co.,

18   2018 WL 1425981, at *4 (E.D. Cal. Mar. 22, 2018) (hereinafter,

19   "State Farm 2018") supports its position that the AOBs are valid

20   contracts.  See Opp'n at 10; Exhibit 1.  However, as Defendants

21   correctly point out in their Reply, State Farm 2018 did not

22   address arguments that AOBs are unenforceable as adhesion

23   contracts that defy reasonable expectations.  See Reply at 6.

24   Importantly, unlike this Court, the State Farm 2018 district court

25   order did not have the benefit of the analysis in Dameron Hosp.

26   Assn. v. AAA N. California, Nevada & Utah Ins. Exch., 77 Cal. App.

27   5th 971 (2022)("AAA") – a recently decided case – which as

28   discussed below, deemed Dameron Hospital's COAs unenforceable

adhesion contracts under California law.

The factual allegations and legal arguments in this case are strikingly similar to those at issue in AAA: both involve Dameron Hospital, automobile insurers, and questions surrounding the assignment of MP and UM benefits.  Plaintiff argues that AAA disposes the contract issue in its favor, however, the Court finds that AAA squarely holds that Dameron Hospital's COAs are adhesion contracts and are unenforceable if patients do not reasonably expect such assignment of benefits to occur.  Id. at 988, 994.

"The distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." AAA at 992, quoting Wheeler v. St. Joseph Hosp., 63 Cal. App. 3d 345, 356 (1976).  There is arguably no weaker party than an individual recently admitted to an emergency room for injuries sustained in an accident or any individual under the care of medical professionals and awaiting discharge from a hospital.  As Defendants persuasively point out, Dameron Hospital's COAs possess all the characteristics of a contract of adhesion because "[t]he would-be patient is in no position to reject the proffered agreement, to bargain with the hospital, or in lieu of agreement to find another hospital." AAA, at 992-93, quoting Wheeler, 63 Cal. App. 3d at 357.

The COAs Dameron Hospital requires are dense standardized contract forms, which must be signed by or on behalf of all patients receiving emergency medical services, before any patient may be discharged.  See Compl. Exhibit 1; ¶ 8.  Patients in need of emergency care like those in this case are in no position to bargain with Dameron Hospital over the terms of the COA or refuse

to sign it and find another emergency room.

As California caselaw maintains, the enforceability of an adhesion contract "depends upon whether the terms of which the adherent was unaware are beyond the reasonable expectations of an ordinary person or are oppressive or unconscionable." <u>AAA</u> at 993, quoting <u>Wheeler</u> at 357.  Here, the Court finds that the COAs that Dameron Hospital required patients to sign are unenforceable when applied to those who would not reasonably expect to sign away their benefits, namely those with medical insurance.

As <u>AAA</u> explained, "[p]atients with medical insurance coverage expect that coverage will 'insulate [them] from any monetary obligation for such medical care.'"  <u>AAA</u>, 77 Cal. App. 5th at 988 (quoting <u>Whiteside v. Tenet Healthcare Corp.</u>, 101 Cal. App. 4th 693, 705 (2002)).  Just like in <u>AAA</u>, Plaintiff's attempt to claim patients' UM and MP benefits once again to recoup more than what health insurance companies would otherwise pay for their patients is simply another attempt to reduce a capped amount of funds that are intended to compensate the patient for the patients' losses and expenses.  <u>Id.</u>

Both policy holders insured by Geico General – D.S. and X.K. – have medical insurance.  D.S. is alleged to have Veterans healthcare benefits and X.K. has Medicare.  Compl. ¶ 4. Similarly, two of three Geico Indemnity policy holders – M.A. and A.G. – are also Medicare recipients.  <u>Id.</u>  Thus, under a straightforward application of <u>AAA</u>, these patients constitute the precise type of patient whose reasonable expectations would not align with Dameron Hospital's AOBs.  The lesson of <u>AAA</u> is that any policy holder with medical insurance would not reasonably expect

to assign their MP and/or UM Benefits because persons with these benefits "expect benefits to be paid directly to them to compensate them for their bodily injuries."  Id. at 993-94.

Plaintiff suggests that government-funded insurance may be different than other insurance.  But Plaintiff's Complaint does not contain sufficient factual allegations to support its claim that Medicare or Veterans healthcare insurance is a "payer of last resort" under the facts of this case.

The only scenario AAA recognized where an AOB was not immediately invalid as beyond the reasonable expectations of an ordinary person concerned the patient, R.D., who had MP benefits that were capped at $5,000.  AAA, 77 Cal. App. 5th at 992, 995; see also Opp'n at 7.  Because R.D. had a cap on his benefits, the court found that a trier of fact could conclude it was within reasonable expectations that Dameron would collect amounts beyond the $5,000 policy from other benefits.  Here, J.M., who is alleged to be a self-payer with no other insurance, parallels R.D. because without medical insurance, he is not similarly situated to those with Medicare or Veterans healthcare who would reasonably expect their MP or UM benefits to compensate them for their injuries. See Compl. ¶ 31.  Thus, the Court agrees with Plaintiff's contention that AAA acknowledged there might be an assignment expectation for first-party MP where the patient was self-paying (i.e., had no other form of health insurance or health care payment coverage) and finds that Dameron Hospital has plausibly stated a claim for breach of contract only with regard to the self-pay patient J.M. 77 Cal. App. 5th at 992-995.
///

1        b. Partial Assignment May Be Valid Assignments As to

2           J.M.

3        Given the Court's determination that Dameron Hospital's COAs

4   and the AOBs within them are unenforceable adhesion contracts for

5   those with medical insurance, the Court need not reach the partial

6   assignment issue except with regard to J.M., the self-payer.  In

7   the case of J.M., it is plausible that it was within that

8   individual's reasonable expectations for Dameron Hospital to

9   collect direct payments from Geico Indemnity out of J.M.'s MP or

10  UM benefits since J.M. is alleged to have had no other insurance

11  and these automobile benefits do cover medical expenses in

12  addition to compensating bodily injuries.  Therefore, it follows

13  that if J.M. could have reasonably expected to sign over "all

14  medical payments under any policy of insurance, and all uninsured

15  and underinsured motorist insurance benefits payable to or on

16  behalf of the patient," to Dameron Hospital, it is possible that

17  the assignments, even if partial, are valid.  Compl., ¶ 10.

18       Defendants' partial assignment argument, discussed in Mot. at

19  11, boils down to a debate over reasonable expectations, which at

20  this stage of litigation, is subject to a low standard of

21  plausibility.  Defendants cite Stein v. Cobb, 38 Cal. App. 2d 8

22  (1940), Reichert v. Gen. Ins. Co. of Am., 68 Cal. 2d 822, 834

23  (1968), and Portillo v. Farmers Ins. Exch., 238 Cal. App. 2d 58

24  (1965) for the proposition that their consent is needed.  See Mot.

25  at 11, 13.  However, these cases are inapposite because they were

26  decided in distinguishable contexts.  Stein does not deal with the

27  automobile insurance context, rather, it discusses publishing

28  rights.  Reichert deals with property damage and fire insurance.

8

1   Portillo deals with the wrongful death context where an individual

2   did not survive their injuries, implicating a very different body

3   of common law not in operation here.  Even if the Court credited

4   Defendants' arguments that personal injury causes of action cannot

5   be transferred, this would at most mean that J.M.'s UM benefits,

6   which are paid directly for personal injuries and not at issue in

7   this case, are not transferrable.  Here, Dameron Hospital is not

8   claiming J.M.'s UM benefits, and only alleges that Geico paid MP,

9   which exists to cover medical expenses, in violation of the AOB.

10  See Compl. ¶ 31.

11       Based on these cases, the Court is not persuaded as a matter

12  of law that Geico's consent was necessary to assign MP benefits or

13  that partial assignments "increase[] Geico's burden beyond what it

14  contracted for" because presumably, if a patient can reasonably

15  expect to assign automobile benefits to cover medical expenses,

16  they would not expect to receive these benefits directly from

17  their automobile insurer, meaning that Geico would only need to

18  pay MP benefits to Dameron Hospital.[2]

19       Construing the facts most favorable to the Plaintiff that

20  J.M. received MP benefits from Geico Indemnity as alleged in

21  Compl. ¶ 31, the Court finds that Plaintiff has plausibly pleaded

22  that J.M. could have assigned their automobile benefits to Dameron

23  Hospital.

24              2. Plaintiff Fails to State a Claim Under the UCL

25       The UCL protects California's consumers by prohibiting any

26

27  [2] In any case, the Court cannot consider the additional arguments
    regarding Stein, Reichert, or Portillo discussed in the latter
    half of Defendant's Reply because it exceeds the page limit set by

28  the filing order in this case.  See Order, ECF No. 11-2; 5.

1  "unlawful, unfair or fraudulent business act or practice." Cal.

2  Bus. & Prof. Code § 17200.  The remedies available under the UCL

3  are injunction and restitution.  Id.  As discussed below, because

4  Plaintiff has failed to state a viable breach of contract claim

5  for four of the five patients due to the unenforceable nature of

6  the adhesion contracts, it follows that the UCL claims flowing

7  from those allegations similarly fail.  The UCL claim as to the

8  fifth patient, J.M., also fails because breach of contract claims

9  are not actionable under the UCL and Plaintiff has failed to

10  allege any unlawful, unfair, fraudulent, or injurious conduct to

11  consumers.

12            a. Unlawful Prong

13        Under the "unlawful prong" of § 17200, a specific activity is

14  not proscribed, rather, the UCL "borrows violations of other laws

15  and treats them as unlawful practices that the [UCL] makes

16  independently actionable." Id. at 1048.  Cel-Tech Commc'ns, Inc.

17  v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999)

18  (citing Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383

19  (1992)).  However, "a common law violation such as breach of

20  contract is insufficient" to support a claim under the unlawful

21  prong of California's UCL.  See Shroyer v. New Cingular Wireless

22  Servs., 622 F.3d 1035, 1044 (9th Cir. 2010); Vascular Imaging

23  Professionals, Inc. v. Digirad Corporation, 401 F. Supp.3d 1005,

24  1014 (S.D. Cal. 2019) (quoting Shroyer); see also Mazal Group, LLC

25  v. Espana, 2:17-cv-05856-RSWL-KS, 2017 WL 6001721, at *4 (C.D.

26  Cal. Dec. 4, 2017) (granting motion to dismiss UCL claim when

27  plaintiff did not go beyond alleging a violation of common law).

28  Plaintiff in the instant case does not go beyond alleging common

1  law contract violations and has, therefore, failed to state a

2  claim under the first prong of the UCL.

3                    b. <u>Unfair Prong</u>

4      Plaintiff argues that a business practice is unfair "when the

5  practice 'offends an established policy or when the practice is

6  immoral, unethical, oppressive, unscrupulous or substantially

7  injurious to consumer.'[citations]".  <u>State Farm Fire & Casualty</u>

8  <u>Company v. Sup. Ct.</u>, 45 Cal.App.4th 1093, 1104 (1996).  Yet,

9  Dameron Hospital fails to allege anything beyond the purported

10  violation of the AOBs and an unsubstantiated California policy

11  that "favors enforceability of a hospital patient's assignment of

12  insurance benefits."  Compl. ¶ 19.

13      As demonstrated by the caselaw surrounding patients'

14  reasonable expectations, the established policy is that automobile

15  insurers, like Geico, will directly pay their policyholders MP and

16  UM benefits.  On its face, there is no plausible unfair business

17  practice claim because Geico's payments to patients are in line

18  with well-established practices in the medical and automobile

19  insurance industry.

20      Plaintiff's UCL claim under the unfair competition prong is

21  simply a repetition of its contract claim. As discussed above,

22  this prong of the UCL claim is both not covered by the UCL and

23  unenforceable.  <u>See</u> Compl. ¶ 19.  Additionally, as Defendants

24  counter, Dameron does not explain why its own interest in

25  receiving direct payment from Geico outweighs the insureds'

26  interests in receiving their auto-policy benefits directly from

27  Geico and using those benefits to pay their medical bills.  Reply

28  at 7.

In sum, Plaintiff fails to allege any immoral, unethical, oppressive, unscrupulous or injurious behavior attributable to the Defendants.  Because the AOBs are unenforceable and contract claims are not covered by the UCL, Plaintiff must assert that Geico's practices harm consumers to state a plausible claim for relief under the UCL.  As currently alleged, Defendants' failure to comply with an unenforceable contract does not by itself create a harm to consumers or the insured individuals.  In fact, these contracts are unenforceable precisely because the lack of negotiation or opportunity to examine adhesion contracts makes them restrictive and oppressive for consumers.  Geico refusal to comply with an unenforceable contract is not unlawful nor unfair.  Dameron's claim under the UCL is therefore dismissed.

### 3. Dameron fails to state a claim under the Medicare Secondary Payer Act

Plaintiff argues that it is entitled to payment since Defendant is the primary payer under federal law and that Medicare is the payer of last resort.  See Compl. ¶ 30, 54.  Defendants argue that Plaintiff's allegations are simply conclusory statements and Plaintiff has not adequately alleged that Geico General and Geico Indemnity are responsible for the medical services at issue.  Mot. at 6.  The parties agree that a private cause of action is available under the MSP Act only where a primary plan fails to provide for primary payment or reimbursement in accordance with the Act.  Mot. at 15; Opp'n at 18.  Thus, a claim under the MSP Act is plausible only if Defendants are primary plan providers.

While Plaintiff alleges in its Complaint that Defendants'

1   automobile insurance coverage is primary to patients' Medicare

2   coverage, the federal law Plaintiff cites specifies situations in

3   which Medicare is the secondary payer, for example, where an

4   individual is insured by another healthcare plan. <u>See</u> Compl. ¶

5   54; 42 U.S.C.A. § 1395y(b). The MSP Act refers to certain primary

6   plans, which are defined by federal statute as "a group health

7   plan or large group health plan" 42 U.S.C.A. § 1395y(a)(2)(A)(ii).

8   These group health plans are defined as "plan[s] (including a

9   self-insured plan) of, or contributed to by, an employer

10  (including a self-employed person) or employee organization to

11  provide health care (directly or otherwise) to the employees,

12  former employees, the employer, others associated or formerly

13  associated with the employer in a business relationship, or their

14  families." 26 U.S.C.A. § 5000(b)(1),(2). By letter of the

15  statute, the MSP Act defines primary plans as other medical

16  insurance plans, not automobile insurance policies.

17      Dameron Hospital alleges that Defendants are the primary

18  payers, but whether an automobile insurer can by law be a primary

19  payer is not addressed in the MSP Act's statutory text. Indeed,

20  the statute does not reference automobile insurance at all and

21  addresses only other healthcare insurance. <u>See generally</u>, 42

22  U.S.C.A. § 1395y(b). Plaintiff cites an out of circuit case for

23  the proposition that Geico has payment responsibility in this

24  case. <u>See</u> Opp'n at 8 (citing <u>MSP Recovery Claims v. Ace American</u>

25  <u>Ins. Co.</u>, 974 F.3d 1305, 1316 (11th Cir. 2020)). However, that

26  case is not binding on this Court and even if the Court accepts

27  Plaintiff's allegation that Medicare and Veterans healthcare are

28  never primary insurers, this does not automatically make another

13

presumably secondary insurance, like automobile insurance, a primary payer.  As Defendants point out, Plaintiff fails to identify the type of coverage at issue or any applicable settlement agreement or contractual obligation to establish that Geico has payment responsibility.  <u>See</u> Mot. at 17.

Here, Dameron Hospital's allegations are too conclusory to plausibly support primary medical payment responsibility for Defendants who are automobile insurers.  <u>Id</u>. While Dameron hospital "prays for leave to take discovery from Geico and then file an amended complaint," as discussed below, the Court instead grants Defendants' motion to dismiss this claim without prejudice.

C.   Leave to Amend

A court granting a motion to dismiss a claim must decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the <u>Foman</u> factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  <u>Id</u>. (citing <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  <u>Intri-Plex Techs., Inc. v. Crest Group, Inc.</u>, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing <u>In re Daou Sys.,</u>

14

1   <u>Inc.</u>, 411 F.3d 1006, 1013 (9th Cir. 2005); <u>Ascon Props., Inc. v.</u>

2   <u>Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need

3   not be granted where the amendment of the complaint . . .

4   constitutes an exercise in futility . . . .")).

5        Here, the Court finds that it is not clear that the

6   Complaint's defects cannot "be saved by [] amendment," and

7   allowing Plaintiff an opportunity to try to save its claims at this

8   stage of the litigation would not be prejudicial to Defendant since

9   the Court is allowing Plaintiff's breach of contract claim for

10  patient J.M. to move forward.

11                        III.   ORDER

12       For the reasons set forth above, the Court GRANTS Defendant

13  Geico General Insurance Company and Geico Indemnity Company's

14  Motions to Dismiss WITH LEAVE TO AMEND and DENIES Defendants motion

15  to dismiss the breach of contract claim only as it pertains to

16  self-pay patient J.M..

17       If Plaintiff elects to amend its complaint, it shall file a

18  First Amended Complaint within twenty days of this Order.

19  Defendants' responsive pleadings are due twenty days thereafter.

20  Additionally, Defendants' counsel is ordered to pay $250 to the

21  Clerk of the Court, within five days of this Order, for violation

22  of the specified page limits for Reply Briefs pursuant to the Order

23  Regarding Filing Requirements, ECF No. 11-2; 5.

24       IT IS SO ORDERED.

25  Dated: October 24, 2024

26

27  _____

28  JOHN A. MENDEZ
    SENIOR UNITED STATES DISTRICT JUDGE